O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESTER RUSSELL,<br><br>        Plaintiff,<br><br>    v.<br><br>PARADIGM PACKAGING WEST, LLC, and DOES 1 through 5, inclusive,<br><br>        Defendants. | Case No. EDCV 08-178-VAP (JCRx)<br><br>**[Motion filed on January 16, 2009]**<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Defendant's Motion for Summary Judgment came before the Court for hearing on February 9, 2009. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS the Motion.

**I. BACKGROUND**

Plaintiff Lester Russell filed a Complaint in California Superior Court, County of San Bernardino, on December 28, 2007, naming Paradigm Packaging West as the

Defendant.  (See Not. of Removal.)  Plaintiff asserts a claim for wrongful termination in violation of public policy.  (Id.)  Defendant removed the action on the basis of diversity jurisdiction, 28 U.S.C. § 1332, to the United States District Court on February 7, 2008.  (Id.)

On January 16, 2009, Defendant filed a Motion for Summary Judgment, a Statement of Uncontroverted Facts ("SUF"), the Declaration of Yvonne Arvanitis ("Arvanitis Declaration"), the Declaration of Sandra Jimenez ("Jimenez Declaration"), the Declaration of Ken Spirko ("Spirko Declaration"), and the Declaration of Mario Tapia ("Tapia Declaration"), noticed for a hearing on February 9, 2009.  On January 22, 2009, Plaintiff filed Opposition, a Statement of Genuine Issues ("SGI"), and the Declaration of Sheri L. Leonard ("Leonard Declaration").

On January 30, 2009, Defendant filed a Reply, an itemized response to Plaintiff's SGI, a statement of additional uncontroverted facts, the supplemental Declaration of Yvonne Arvanitis ("Supp'l Arvanitis Declaration"), the supplemental Declaration of Mario Tapia ("Supp'l Tapia Declaration"), and the Declaration of Jim Dyer ("Dyer Declaration").

## II. UNCONTROVERTED FACTS

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of this Motion. <u>See</u> Local Rule 56-3.

Paradigm Packaging West, LLC ("Defendant"), is a business that manufactures rigid plastic containers and enclosures for the healthcare, nutritional, pharmaceutical, and food industries. (SUF ¶ 1.) Defendant operates facilities in California, including one in Upland, California. (SUF ¶ 2.)

The Upland facility operates in winter and summer modes. (SUF ¶ 9.) The winter mode lasts from October through June, and the summer mode from June through October. (SUF ¶¶ 10, 11.) The winter mode requires day, swing, and graveyard shifts; the summer mode requires graveyard and swing shifts. (SUF ¶¶ 12, 13.)

Plaintiff began working as a molder for Defendant in its Upland facility on January 15, 2007. (SUF ¶¶ 7, 8.) At first, Plaintiff worked the day shift of the winter mode, but then started working the swing shift. (SUF ¶¶ 15-16.)

1    In May 2007, Plaintiff met with other employees of
2 the Upland facility to discuss scheduling shifts for the
3 upcoming summer mode.  (SUF ¶ 17.)  After that meeting,
4 Plaintiff spoke to Defendant's Vice President, Steve
5 Konsecki ("Konsecki"), and requested a modification of
6 his work schedule because of his child care
7 responsibilities.  (SUF ¶ 18.)  Konsecki accommodated
8 Plaintiff's request.  (SUF ¶ 19.)  Plaintiff was assigned
9 to the swing shift during the summer mode and worked with
10 foreman Mario Tapia ("Tapia").  (SUF ¶ 20.)
11
12    On August 14, 2007, Plaintiff was working with Tapia;
13 after a few hours, Tapia passed by Plaintiff upon
14 returning from a break, and Plaintiff thought Tapia
15 smelled like marijuana.  (SUF ¶¶ 23, 26.)  After speaking
16 with his supervisor and manager, Plaintiff, along with
17 two other employees that Plaintiff had asked be present,
18 approached Tapia, informed him of Plaintiff's suspicions
19 and that Vasquez and Rodriguez "thought it was a good
20 idea for him to take the rest of the night off or to go
21 to the clinic [to be drug-tested]."  (SUF ¶¶ 27, 28, 31-
22 34.)
23
24    Tapia responded negatively, used a racial epithet in
25 referring to Plaintiff, and said Plaintiff would no
26 longer be working on Tapia's shift.  (SGI ¶ 6.)  Even
27 before this confrontation, Tapia found it difficult to
28

4

work with Plaintiff because Plaintiff often acted like he was the foreman, even though that was Tapia's job. (SGI ¶ 81.)

After the discussion, the human resources manager and the production supervisor arrived at the facility. (SUF ¶¶ 37-41.) Plaintiff explained what happened and said he was concerned for Tapia's safety. (SUF ¶ 42.) The human resources manager told Plaintiff, "Okay Lester, you can go home .... Apparently you and Mario don't get along." (Id.)

Plaintiff was reassigned to the graveyard shift beginning the week of August 19, 2007 because of the August 14 incident with Tapia. (SUF ¶ 48.) This new schedule conflicted with Plaintiff's child care responsibilities; Konsecki revised the schedule to accommodate Plaintiff, at his request. (SUF ¶¶ 52, 54.)

Despite this accommodation, Plaintiff continued to experience conflicts with his child care responsibilities, and did not report for work from August 26, 2007 through September 1, 2007. (SUF ¶ 55.) Plaintiff contacted Konsecki and asked him to modify his schedule again. Konsecki modified the schedule and permitted Plaintiff to work the graveyard shift only on the weekends, beginning on September 2, 2007, again as

Plaintiff requested. (SUF ¶ 56.) Plaintiff agreed this was the only schedule that would not interfere with his child care responsibilities. (SUF ¶ 57.)

Plaintiff worked his scheduled shift on September 2, 2007. (SUF ¶ 68.) During that shift, his new foreman asked him to pack bottles in addition to his usual duties as a molder. (SGI ¶ 10.) Most employees, including foremen, are asked to pack bottles as part of their usual duties. (SUF ¶ 82.) Plaintiff did not show up for work after his shift on September 2, 2007. (SUF ¶¶ 68, 73.)

At some point after September 2, 2007, Plaintiff turned down a job offer from Solo Cup Company to work during a shift similar to Defendant's swing shift. (SUF ¶¶ 79, 80.)

### III. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

1    Generally, the burden is on the moving party to
2 demonstrate that it is entitled to summary judgment.
3 Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998);
4 Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707
5 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears
6 the initial burden of identifying the elements of the
7 claim or defense and evidence that it believes
8 demonstrates the absence of an issue of material fact.
9 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
10
11   When the non-moving party has the burden at trial,
12 however, the moving party need not produce evidence
13 negating or disproving every essential element of the
14 non-moving party's case.  Celotex, 477 U.S. at 325.
15 Instead, the moving party's burden is met by pointing out
16 there is an absence of evidence supporting the non-moving
17 party's case.  Id.
18
19   The burden then shifts to the non-moving party to
20 show that there is a genuine issue of material fact that
21 must be resolved at trial.  Fed. R. Civ. P. 56(e);
22 Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The
23 non-moving party must make an affirmative showing on all
24 matters placed in issue by the motion as to which it has
25 the burden of proof at trial.  Celotex, 477 U.S. at 322;
26 Anderson, 477 U.S. at 252; see also William W. Schwarzer,
27
28

A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

**IV. DISCUSSION**

Defendant moves for summary judgment on Plaintiff's only claim, for wrongful discharge in violation of public policy.[1] California law permits an employee to recover tort damages from an employer if the employee was

---

[1] In their briefs, the parties use the standard for b Title VII retaliatory discharge cases, which requires the following: (1) plaintiff must show he engaged in a protected activity and he suffered an adverse employment action because of that activity; (2) the burden shifts to defendant, who must articulate a legitimate non-discriminatory reason for the adverse employment action; and (3) the burden shifts back to plaintiff, who must show defendant's proffered reason was pretextual. <u>See Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640-41 (9th Cir. 2004). Here, Plaintiff does not bring a Title VII action; rather, Plaintiff's only claim is for wrongful discharge in violation of public policy, a California claim that requires a different analysis than Title VII claims. Accordingly, the Court applies the California standard.

discharged in violation of a fundamental public policy. Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 172 (1980). Where, as here, discrimination is not alleged, a claim for wrongful discharge in violation of public policy requires a plaintiff to prove the following: (1) he was employed by defendant; (2) he was discharged; (3) his conduct was in furtherance of public policy and was a motivating reason for his discharge; and, (4) the discharge caused the plaintiff harm. See Haney v. Aramark Uniform Serv., Inc., 121 Cal. App. 4th 623, 641 (2004). "[A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity." Green v. Ralee Eng'g Co., 19 Cal. 4th 66, 87 (1998).

Here, the parties do not dispute that Defendant employed Plaintiff. Thus, the Court reviews only the remaining three elements of Plaintiff's claims.

**A.   "Discharge" of Plaintiff**

Plaintiff asserts a theory of constructive discharge, i.e., he suffered an adverse employment action - being assigned to a new shift because of the August 14 confrontation with Tapia - that required him to quit his job. Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1244-45 (1994). "In order to establish a constructive

discharge, an employee must [] prove . . . that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." Id. at 1251. The conditions giving rise to an employee's resignation "must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." Id. at 1246.

Defendant argues "Plaintiff cannot show that his transfer to a different shift was so intolerable or aggravated that a reasonable person would be forced to quit." (Reply at 4.) Defendant presents undisputed evidence that following Plaintiff's shift reassignment after the August 14 incident, it twice accommodated Plaintiff's requests to change his shift schedule to accommodate his child care responsibilities. (See Mot. at 11; SUF ¶ 52, 56.) The shift change cannot be construed a discharge, Defendant argues, and Plaintiff simply stopped showing up to work his scheduled shifts. (See Mot. at 7, 11.)

1    Defendant has met its burden here, and the burden now
2 shifts to Plaintiff, who carries the burden of proof on
3 this claim at trial, to demonstrate a genuine issue of
4 material fact that must be resolved at trial. Celotex,
5 477 U.S. at 324; Anderson, 477 U.S. at 256.

7    According to the Ninth Circuit, in order to meet his
8 resulting burden, Plaintiff must raise a genuine issue of
9 material fact that his "working conditions bec[a]me so
10 intolerable that a reasonable person in the [Plaintiff's]
11 position would have felt compelled to resign[]." Poland
12 v. Chertoff, 494 F.3d 1174 (9th Cir. 2007) (quoting Penn.
13 State Police v. Suders, 542 U.S. 129, 141 (2004)).
14 Plaintiff attempts to meet this burden as follows.

16    First, Plaintiff contends Defendant deliberately
17 assigned him to graveyard shifts after the August 14
18 incident, knowing he could not work such a schedule
19 because of his child care responsibilities. (See Opp'n
20 at 9.) This contention fails both as a matter of law,
21 and on the facts present here.

23    "[C]onstructive discharge cannot be based upon the
24 employee's subjective preference for one position over
25 another." Poland v. Chertoff, 494 F.3d at 1185 (citation
26 omitted) (holding that employer's requirement that the
27 employee move from Oregon to Virginia, from a supervisory

position to a non-supervisory one, with no reasonable expectation of promotion or advancement, did not constitute constructive discharge); see also Wu v. Pacific Hotel Co., 2001 WL 492475, at *7-8 (N.D. Cal. 2001) (employee could not raise genuine issue of fact demonstrating constructive discharge after being reprimanded once and having his work hours reduced, resulting in his "subjective perception of a stressful situation").  In Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 761-62 (5th Cir. 2001), the plaintiff employee returned to work after taking a medical leave and the defendant employer allowed her to choose whether she wanted to switch to the night shift or take a part-time shift during the day.  The employee argued, inter alia, that the defendant's failure to reinstate her to the same shift she worked before she went on medical leave constituted retaliation and constructive discharge. Id. at 762.  There, the Fifth Circuit found the plaintiff's subjective preference to work one shift over another could not form the basis for a constructive discharge claim.  Id. at 771-72.  Here, Plaintiff's subjective preference to work the swing shift, rather than the graveyard shift, likewise does not support his claim for constructive discharge.

1    Further undermining Plaintiff's shift-preference
2 argument, Defendant presents undisputed evidence that
3 Plaintiff's child care responsibilities conflicted with
4 him working the swing shift as of August 14, which he now
5 argues was the only shift he could work without conflict.
6 (SUF ¶ 79.)  Also, Defendant shows Plaintiff turned down
7 a position with Solo Cup Company, which offered him a
8 shift similar to Defendant's swing shift.  (Id. at ¶¶ 79,
9 80.)  Plaintiff rejected the offer because working that
10 shift conflicted with his child care responsibilities.
11 (Id.)  Accordingly, Defendant shows, despite the August
12 14 incident and subsequent reassignment to the graveyard
13 shift, Plaintiff could not even continue to work the
14 swing shift, to which Plaintiff now argues Defendant
15 should have reinstated him.

17    Defendant also presents undisputed evidence that it
18 made a reasonable business decision in separating Tapia
19 and Plaintiff from one another after the August 14
20 incident, and re-assigning Plaintiff to a different
21 shift, as Plaintiff was junior to Tapia.  (See Reply at
22 7.)  Having decided to reassign Plaintiff, Defendant
23 nevertheless twice accommodated his requests to change
24 his shifts so that Plaintiff could meet his child care
25 responsibilities.  (See Mot. at 11; SUF ¶ 52, 56.)
26 Defendant also shows Plaintiff's child care
27 responsibilities conflicted with him working the swing

shift, despite the August 14 incident and his subsequent reassignment to the graveyard shift. (SUF ¶¶ 79, 80.)

Plaintiff makes two other efforts to meet his resulting burden. They fail as well. He contends his reassignment after the August 14 incident constituted a constructive discharge because his hours were curtailed to only weekend shifts, resulting in a loss of work and income. (See Opp'n at 10.) Plaintiff admitted at his deposition, however, he requested Defendant change his schedule so he could work only on weekends. (Reply at 4; SUF at ¶ 79.) Therefore his attempt to characterize such a change as a punitive or retaliatory action by Defendant fails.

Finally, Plaintiff argues his new shift foreman required him to perform the "menial" task of packing bottles; Plaintiff thought this task was not part of his job but actually a form of punishment, or retaliation, for the August 14 incident. (See id. at 11.) Other than his own testimony on the subject, Plaintiff presents no evidence that other employees did not perform this work. Defendant, on the other hand, adduces evidence that most employees, including foremen, pack bottles, the task Plaintiff complained was a form of retaliation. (Reply at 7-8; Tapia Supp. Decl. at ¶ 7; Dyer Decl. at ¶ 4.)

1    Thus, Plaintiff has failed to raise a triable issue
2 of fact as to whether he was subjected to intolerable or
3 aggravated working conditions that would support a
4 reasonable person's decision to resign.

6    Defendant accommodated Plaintiff's child care
7 responsibilities and scheduled him to work the graveyard
8 shift only on the weekends, pursuant to Plaintiff's
9 request.  Defendant made a business decision to reassign
10 Plaintiff to a different shift, given the August 14
11 incident, instead of reassigning Tapia, who held a more
12 senior position to Plaintiff.  Plaintiff presents no
13 evidence to show Defendant's decision resulted in
14 intolerable working conditions for Plaintiff.  Plaintiff
15 fails to raise a triable issue of fact that he was
16 discharged.

**B.   Conduct in Furtherance of Public Policy and
      Motivating Reason for Discharge**
    **1.   Public Policy**

For a public policy to support a wrongful discharge claim, it must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) 'substantial' and 'fundamental.'"

15

<u>Stevenson v. Superior Court</u>, 16 Cal. 4th 880, 901-02 (1997) (citations omitted).

"The cases in which California courts have recognized a separate tort cause of action for wrongful termination in violation of public policy generally fall into four categories, where the employee is discharged for: (1) refusal to violate a statute ...; (2) performing a statutory obligation ...; (3) exercising (or refusing to waive) a statutory or constitutional right or privilege ...; or (4) reporting an alleged violation of a statute of public importance...." <u>Pettus v. Cole</u>, 49 Cal. App. 4th 402, 454 (1996) (citations omitted). "[A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity." <u>Green v. Ralee Engineering Co.</u>, 19 Cal. 4th 66, 87 (1998).

Defendant argues Plaintiff fails to identify an applicable public policy and that Plaintiff's belief that Tapia was under the influence of drugs on August 14 was unreasonable. (<u>See</u> Mot. at 9.) As Plaintiff carries the burden of proof on this claim at trial, he must demonstrate a genuine issue of material fact that must be resolved at trial on this issue. <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.

1     Plaintiff argues he held a reasonable belief that
2  Tapia was under the influence of drugs on August 14, and
3  that the public policy to "prohibit retaliatory discharge
4  for reporting safety and health considerations" to an
5  employer applies here.  (See Opp'n at 6 (quoting Skillsky
6  v. Lucky Stores, Inc., 893 F.2d 1088, 1093 (9th Cir.
7  1990).)  He submits evidence, in the form of his
8  deposition testimony, that he observed Tapia behaving
9  "erratically" and smelled the odor of marijuana on him,
10 and, on this basis, he formed a good faith belief that
11 Tapia was under the influence of marijuana in the
12 workplace, and was a danger to himself and his fellow
13 employees.

15    In Collier v. Superior Court, 228 Cal. App. 3d 1117,
16 1123 (1991), an employee brought suit for wrongful
17 termination in violation of public policy because he
18 reported his co-workers' illegal conduct, including
19 bribery, embezzlement, tax evasion, drug trafficking and
20 money laundering, to senior management, who discharged
21 him soon thereafter.  Reversing the trial court, the
22 Collier court found the employee pled a sufficient basis
23 for his wrongful termination claim because there is a
24 "fundamental public interest in a workplace free from
25 illegal practices."  Id. at 1124.  Here, Plaintiff meets
26 his burden by showing he reported a safety concern, based

on his subjective perceptions, that falls under the fundamental public interest announced in Collier.

### 2. Motivation or Basis for Discharge Contravenes Public Policy

To prevail on this claim, Plaintiff must also show the motivation or basis for his constructive discharge contravenes the Collier public policy interest. See Rojo v. Klinger, 52 Cal. 3d 65, 88-91 (1990); Foley v. Interactive Data Corp., 47 Cal. 3d 654, 667 n.7 (1988) (the tort of discharge in violation of public policy protects the public's interest in "not permitting employers to impose as a condition of employment a requirement that an employee act in a manner contrary to fundamental public policy.").

Here, Defendant argues Plaintiff cannot show Defendant discharged Plaintiff, or that Defendant's choice in reassigning Plaintiff to a different shift because of the August 14 incident violated public policy. (See Mot. at 10-11.) As set forth in Section A above, Defendant meets its burden here, and Plaintiff fails to meet his resulting burden. Defendant is entitled to summary judgment on Plaintiff's claim for wrongful discharge in violation of public policy.

**C. Punitive Damages**

As Defendant is entitled to entry of judgment in its favor on both claims against, the issue of punitive damages is moot.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

Dated: February 11, 2009

VIRGINIA A. PHILLIPS
United States District Judge

19